Good morning, Your Honors. Dennis Dolan here for the Travelers Insurers. Thank you for allowing me to address you today. This underlying dispute is an insurance coverage matter trying to determine what policies are triggered in relation to claims, civil rights violations related to wrongful arrest, prosecution, and imprisonment. And I think it's really important here to, as you do in any case, let's look at an appeal, look at what it was exactly that the district court did in the ruling that we're appealing. The district court . . . You said a lot of cases on your brief that you say is inconsistent with the district court's ruling. I think a lot of those have a trigger, a coverage trigger of the occurrence having to be during the policy period. Which of the cases you rely on, like the policy you're involved with here, have the injury being the trigger during the coverage policy? And there are a number of cases that we cited that are injury-based triggered policies. There's a couple of the decisions out of Illinois, St. Paul v. City of Waukegan, St. Paul v. Zion. Now those cases involve the exact same policy language that we're looking at here. There was also a Northern District, Indiana case, Tig v. Elkhart, I believe is the name of that one. There's other cases. There was an Idaho Supreme Court case. There's also a federal district court case out of Florida. That's the bribe, I believe, Broward County. There's a whole host of cases that we've cited that are injury-triggered policies and a number of them involving the exact same language. Those are outlined in the reply brief, I think towards the end of our reply brief, where we cited a number of those cases. I think it's very helpful and instructive to review those cases, and I'm sure the Court has. If you look at those cases, whether or not they're talking about . . . and this expands out into some of the other decisions as well, the decisions involving offense-based policies or occurrence-based policies or wrongful acts-based policies, there's a common theme or a thread that I think you can see in those cases, and that common thread is manifestation. Even in the cases where the courts are construing offense-based language, they looked at when is the injury manifesting, and they said that the injury in these cases is manifesting immediately upon the wrongful conduct that takes place, the initiation of the malicious prosecution, for instance. Since the injuries immediately manifested, these are the policies that are going to be triggered. Again, I think that the courts are looking at that manifestation in the manifestation of the injury, regardless of the policy language. Counsel, it seems to me that your opponents are arguing a fair amount about the injuries that the plaintiffs and plaintiff's decedents suffered through the years of their incarceration as additional injuries other than the initial false imprisonment and everything else you said. What he talks about in his two immediate opinions from which these appeals were taken is that the incarceration is continuing for the entire period. Is that a fair assessment of his opinion, that he doesn't look at the diseases they're accumulating, just other things that happened to him in prison? I think that is correct. I think that's exactly what the district court judge did. He cited, if you look at the opinion, what he focused on was the imprisonment. False imprisonment is a personal injury offense in the policy, in the traveler's policies. The judge said false imprisonment, or he said imprisonment, was ongoing throughout this entire time period, so we're going to use that to trigger these policies because that's . . . Why wouldn't the injuries themselves be independent, repeating through the years claims that the could be brought? Your Honor, I think if you look at the . . . I think you're correct in using the word repeating. If you look at the allegations in the complaint, the plaintiffs in this case, they allege the exact same injuries, whether it was bodily injury or personal injuries, occurring throughout the time period of their incarceration. Based on the decisions we've cited, these are cases, this is just an ongoing ill effects of the initial conduct, the initial prosecution, arrest, and imprisonment. There's nothing new being alleged throughout that time period. Now, maybe they add some details about exactly what types of injuries that they're claiming, but if you look at the allegations of the complaint, they're very specific about that. They're saying, we suffered the exact same injuries throughout this time period. It began day one and continued throughout. It's our contention, and also based on the allegations of the complaint, they cite to only the conduct in the 79 and 1880 time frame. This is what Judge Sterritt did in his ruling. He said . . . I have one question since you're wrapping up. I think one thing everyone agrees on is that there's no Mississippi case on point. I think Judge Sterritt recognized that. He talked about an airy guess in part of the opinion. Do you have a position on whether it would make sense to certify the question to the Mississippi Supreme Court? That's a good question, Your Honor. Certainly, if you wanted finality from the Mississippi Supreme Court, then probably the only way to get that would be to certify the question. My client wouldn't have an objection to a question being certified to the Mississippi Supreme Court, but we think based upon the wealth of authority that's out there, and in particular, the parallels between Mississippi and Illinois law that we pointed out in our briefs, that that's sufficient guidance for the court to be able to reach a conclusion here. That answer basically means you would accept just winning here, but a certified question to the Supreme Court of Mississippi would be an alternative? I certainly think that's an option that the court could exercise. All right. A fair assessment of all of you, I suppose. All right. Thank you. All right. Thank you. May it please the Court. Good morning, Your Honors. My name is Patrick O'Million. I'm here for Appellant Scottsdale Insurance Company. The district court erred in its March 30, 2017 memorandum order and opinion in finding that Scottsdale is required to defend its insurer, the 4th County, in the underlying complaint, and it made two fundamental errors with respect to the Scottsdale policy. First of all, the court ruled erroneously that the complaint alleges a personal injury offense that was committed during the Scottsdale policy period, and secondly, the court erred in ruling that the claimants sustained injury in the form of imprisonment during the Scottsdale policy period. It's important to remember these gentlemen were incarcerated in 1980, 79, and 80. The allegations of any kind of wrongful act, wrongful conduct by the county during our policy period. It seems to me the most difficult thing I've had with your argument is looking at your policy, which covers both bodily injury and personal injury. You're certainly right that the personal injury dealing with civil rights violations, false imprisonment, does talk about the offense being committed during the 85, 86 period. Bodily injury is there as well. I don't see anything in the policy or in case law that you cite to us in which it is held that a policy like this means that if you have something that fits within personal injury, it has to remain under personal injury coverage only, even though bodily injury definition may well cover it as well. So you get into the problem of any ambiguity will be held against you. What do you have that really says it's personal injury, fence has occurred during the policy period? And you're right, Your Honor, the cases don't say that one way or another. What we have here is this complaint. We have to look at this complaint, the allegations and the claims that are asserted in this underlying complaint and compare that to the policy. And this is a complaint that seeks recovery on 17 causes of action. Each one of them is based on Section 1983 or 1985, a constitutional injury. Every single cause of action. In other words, if the plaintiffs are going to recover, it's because they allege a constitutional injury. All of those constitutional injuries, all of the conduct that led up to that occurred in 1979 and 1980. So this is a case where you can't cherry-pick one or two allegations in this massive complaint where all of the theories of recovery and the only grounds for recovery is on a constitutional injury. And so when you reasonably look at and compare the complaint to the policy, the only reasonable interpretation is this complaint, if there's coverage, it's under that personal injury coverage. But bodily injury, it doesn't talk anything about the type of claims. It just talks about the injury, sickness or disease or bodily injury. You could be, suffer a personal injury as a result of conduct that's unconstitutional, I would think. I'm sorry, did you say? I said you can suffer personal injury as a result of conduct that is unconstitutional. Looking at your policy, it says personal injury. No qualifications. I think you're talking about the physical injury, the bodily injury coverage? No, it says that you shall become legally obligated to pay as damages because of wrongful acts which result in personal injury. And you say, well, no, there's a constitutional claim to not personal injury. Well, personal injury is defined as any of the enumerated offenses that must be committed during the policy period. In the court, the district court erred in ruling that the offense meant the injury, whereas the offense, and this court ruled in the American Guarantee case, that the offense means the breach of a moral code, essentially a tort that was committed by the insured during the policy period. We don't have that here. But the personal injury type categories are things like humiliation or mental distress, libel or slander included. I mean, it does seem if you're going to have to carve it out, and it's not too clear, personal injury is talking more about emotional and mental type damages, and then you have a separate bodily injury, which has to be given effect for harm to your physical body. By definition, personal injury also includes the claims here, the false imprisonment, false arrest, false detention, and the civil rights violations. Those are some of the offenses that are enumerated in the program. Yeah, I've got it right here, but I'm just trying to sort out what the difference is because they both have to cover seemingly different things, I think is your point too. In this case, our position is that on this complaint, and taking the complaint as a whole and looking at what the plaintiffs are alleging and how the plaintiffs would recover, if at all, they only recover under any of the causes of action that they've asserted. They're all causes of action under the Civil Rights Act, under Section 1983, Section 1985. Those are squarely covered by the personal injury. Right, but you're saying you can't get bodily injury recovery, which is a separate category, if it results from a constitutional claim covered under personal injury? Not as alleged, sir. We're looking at the allegations in this complaint and the injuries that are alleged, as the plaintiffs have framed their case and described their injuries. They've described continuing injuries in prison, continuing physical injuries. Right, but let's say your policy covered 1979, when everyone agrees all this happened, and they sue for false imprisonment. Would you say they just can come under personal injury, that they can't also recover what's included in bodily injury? Yes. And that's how they can. So you're saying they can never get these injuries for getting beat up or getting diseases in prison? I'm not saying never. In this case, it's — there's no separate causes of action, no separate claims for that. All of the claims here that are alleged. It's not a claim for disease. It's a damage of a claim. That's right. And it's a civil rights claim. The claim is a civil rights claim. And if we don't have a duty to defend any of the claims, there's no duty to defend here. The district court only looked at the personal injury coverage and imprisonment, false imprisonment. The district court didn't get into the bodily injury at all. And I wanted to bring you back to the false imprisonment. False imprisonment, the court found false imprisonment during the Scottsdale policy period as being a separate injury itself, which is the second error. False imprisonment — and Mr. Golan discussed this, and these issues are thoroughly briefed, and I'm not going to get into it too much. False imprisonment, that continues from a prior time through a policy period, has never been considered by any — or at least by the majority, the vast majority of courts, that that is not a new injury or a different injury that would trigger a subsequent policy. In fact, the Mississippi Supreme Court, although it didn't address insurance coverage issues, it looked at — and we cited this case in our brief, the Smith v. Sneed case — that if a wrongful incarceration would be an injury that occurs at the time of conviction and it doesn't occur, it doesn't — it's not a continuing injury. It wouldn't continue until later on time periods. And so the court here, the district court, was wrong in failing to follow the majority of jurisdictions, failing to consider the Smith v. Sneed case, which is from the Mississippi Supreme Court. And considering both of those, the better error guess is that the Mississippi court would rule that false imprisonment in a policy period, subsequently, is not itself an injury or an offense that triggers coverage. Let me ask you this and want the plaintiffs to respond as well. As I understand the settlement that was entered, this duty to defend for the two of you, two insurance companies, was carved out. So were we to find for either one of you that there's no duty to defend, that does not revive and alter in any way whatever indemnity you've already paid? That's correct. So the only thing we have here is whatever your insurance, whatever your defense cost obligation may be. There's a dispute over remaining funds that if the court rules there is a duty to defend, there will be additional monies paid. But if there's no duty to defend, then the case is completely over. All right. Thank you. Repeat, please, the court. My name is Bill Beck, and I represent the estates of Philip Bivins, Larry Ruffin, Bobby Ray Dixon. They're proceeding in this case standing in the shoes of Forest County and the Forest County defendants by virtue of the settlement agreement. Just to clarify the answer that counsel gave with regard to the settlement agreement, there was a dispute between the parties about these two rulings, the insurers which to appeal those. And so the settlement was based on essentially a high-low where one amount is paid if the decision is affirmed, a different amount that has been paid is all that is paid if the decision is reversed. So there certainly is a wide case of controversy if that's crossing anyone's mind. But I just want to talk a little bit about this law enforcement liability coverage, because it's very different than the general liability coverage that has led to so much litigation in long-tail environmental asbestos other claims. Those are typically all written on the same form. And no matter who the carrier is, it's typically the same wording. And so there's a lot of litigation over what a particular word means because it happens over and over and over again. Here, if one looks at just the law enforcement liability policies in the file or even in the briefs, there are different wordings for every carrier. There's no standardized wording. And Judge Sterritt looked at that circumstance faced with summary judgment motions by and against each insurer and said, here are the rules I'm supposed to follow as a district court judge. I'm supposed to look at what is required under the policy as a condition of requiring the insurer to defend the insured. That is the trigger. The trigger isn't a legal rule. The trigger is what the policy says is required for it to apply. And then District Judge Sterritt said, then I've got to look at the allegations, all of them, because if there is a covered allegation in the complaint, the operative complaint, the third amendment complaint, then there's a duty to defend the case with respect to a defendant who's insured under that policy. And the test is often called the eight corners test. It's simply saying, here is the complaint. Here is the policy. Go down element by element in the policy and see if the complaint contains allegations that, if true, would invoke that element of fraudulence. One thing we haven't talked about this morning yet is that during the traveler's policy periods, which is from 2005 to 2011, there are two specific alleged claims in the third amendment complaint that arose that one claim is that in 2006, the parole board wrote to certain fourth county defendants and said, give us your information on this case and that they failed to and there is a claim based upon that, that the, uh, that the judge didn't rely on that, right? He has a paragraph called post-conviction conduct, and he says, I'm not going to rely on that. I'm just relying on the injury being within the policy. I believe in the traveler's order. Your honor, I would, I would say it this way. I would say he primarily relied on the triggering wording and the policy and the fact of imprisonment is satisfying that wording. He didn't say I'm not he actually does mention the 2006 and 2009 as an additional ground for the defense, I believe, and I reviewed that last night. What was it in tooth during the parole proceeding that they failed to disclose that these were coerced confessions or that they had information they were hiding on the other person who was proven to be ultimately the true culprit? I wouldn't do it a good service if I tried to do it from memory. I will tell you, your honor, that it certainly is a combination of simply facts about the underlying prosecution that they had known for a while and facts that they had present in their files at that point in time. I can't say, your honor, that it's a particular fingerprint or a particular card of evidence, but I will say the underlying complaint, the third amendment complaint is very, very lengthy and incredibly detailed because it was known by everyone that there would be challenges based on immunity. There would have to be very precise pleading in order to stay in court, and there is incredibly detailed pleading. You've heard this morning that there are no allegations of any unique injury that occurred during the travel period, and before I recite this, I do want to, I think, answer something that that cops said. Counselor, if I may ask, if you'd stay right behind the microphone, which is right in the center below the light. I tend to be a walker. That's fine, and I expect you'll walk a little bit some more, but think of it at least. Stay behind the microphone. I'll stay right here, but what I meant to say is that it is important to know what Judge Sterritt relied on, but it's also important to know if there are alternate grounds for affirmance of Judge Sterritt's order, and so, for example, even though Judge Sterritt didn't rely a lot on bodily injury allegations with respect to these two defendants, it's certainly appropriate for this court to look at our arguments concerning a duty to defend that occurred uniquely during the periods of these particular insurers and did not exist before those periods, and that's where I think the description of the complaint perhaps doesn't do it justice. In 2005 to 2011, when Travelers was on the risk for Forest County Sheriff's Department, Mr. Dixon had died in prison, but Mr. Bivens was still alive, and in 2007, according to the complaint, he contracted hepatitis C. Originally then, he was not treated. It led to cirrhosis of the liver in 2008 during Travelers' policy period. It led to liver cancer and eventually resulted in his death. That's an allegation specifically about a bodily injury that originated during the Travelers' policy period that we would suggest would provide an additional ground for affirmance of Judge Sterritt's order with respect to Travelers. With respect to, and I apologize, I said Dixon. It's actually Mr. Ruffin who died in prison. Mr. Dixon, in 2005, developed lung cancer and his health deteriorated from 2005 to 2010. He died shortly after he left prison in August of 2010, and specifically from Mr. Dixon and during the Travelers' policy period, there are allegations in the third amendment complaint of staph infections, severe seizures, chest pains, dizziness, convulsions, blurry vision, infections, hematomas, rashes, coughing up blood, nausea, vomiting, diarrhea, bursitis, urinary tract infections, and suicidal depression. So we combed through the prison medical records for the allegations that were made in the underlying complaint. There were bodily injuries that were uniquely alleged during the Travelers' period that were not simply something that happened throughout the incarceration, and that's an important point. Let me talk to you about the application of continuous trigger case law that Judge Sterritt did. Has this ever been used in an incarceration, false incarceration case like this? It has, but I don't know if I'll be citing that case. It's in my brief. Well, it was at one time. It went into a lower court. Anyway, the traditional use of that, almost the entire use of that, it seems to me, is in disease cases, latent asbestosis or something else. I'm not saying it's the be-all, end-all on whether you win or lose, but it seems to me to be particularly if it's not necessary in order to resolve, necessary would mean whether you win with it or not, I guess, but regardless. Isn't this sort of a bad fit for what we're dealing with? It may surprise you to hear me agree with you, Your Honor, that it would be incautious and it's unnecessary because Judge Sterritt, contrary to, I think, some description of it, did not adopt any common law legal rule for what triggers coverage. He looked at the policies. He looked simply at what the policy says. These are, in fact, as Judge Costa observed earlier, injury-triggered policies. He looked at the fact that because these particular policies, we lost on a lot of the policies. We didn't appeal that. If there was a wrongful act-triggered policy, unless there was a specific, unique, wrongful act during the policy period, Judge Sterritt ruled that there was no duty to defend, no coverage, but with respect to the injury-triggered policies, where the only thing the policy requires happen during the period of this policy is that there be some form of injury and where the complaint alleged some form of injury. And Judge Sterritt did talk about bodily injury this far in the Traveler's Order. He noted that the definitions under the Traveler's Policy is a little bit different. Humiliation, mental distress, and embarrassment are actually bodily injuries under the Traveler's Policy, whereas they're personal injuries under the Scottsdale Policy. And he did quote that definition in determining that the allegations of the 30-minute complaint did invoke a duty to defend a possibility of coverage assault under the Traveler's Policy. And so Judge Sterritt did not adopt a rule. He didn't adopt single-trigger, continuous-trigger, triple-trigger, any kind of trigger. He simply said, my task here is, because there are cases that say this exactly, my task here is to take the complaint and the insuring agreement, hold them next to each other, and see if the complaint contains the allegations that invoke the insuring agreement. He did discuss continuous-trigger, but he did so in the context of declining to adopt a common law rule. And in fact, in respect of Traveler's Common Law Rule, where only one policy could ever apply no matter what they say, no matter what policies are written to provide coverage for, Judge Sterritt said doing that by fiat would not be permissible in Mississippi because there are these cases, Universal Underwriters and Crum, both of which say that policy, if it's going to restrict coverage based on a time period, has to first happen. And so this is not a continuous-trigger ruling as it's been written, and it's not required to be a continuous-trigger ruling to be affirmed. I would argue, if I had to, I don't have to here today, but I would argue if I had to, that a policy triggered by injury is triggered by the injury of loss of civil rights, which accompanies incarceration. But I don't have to do that here, because... In fact, you would be saying any injury-triggered policy, you basically wouldn't need to rely on this continuous-trigger theory because there'd always be an injury with, as long as there's an injury within the policy period, it doesn't, I mean, the effect's the same, I guess is what I'm getting at. Let's say this is an asbestos case. You would say, well, the injury is now 20 years after he was exposed to it, so it would be covered. The effect's the same, except that the, it would not provide, a continuous-trigger would provide coverage under the wrongful-act-trigger policies, the policy would require a wrongful act during the policy period. The occurrence of an act, right. Whereas, what we're suggesting, and what we're defending on appeal is a ruling simply that policies that the insurer chose to write on the basis of being invoked and providing the insured coverage in the event there is injury during the policy period, that is simply a those policies to respond in a situation like this where there are unique injuries that are also continuing injuries, both, that occur during that policy period. I would say either invokes an injury-trigger policy, but there's certainly no basis to say that there's not even unique injuries during these policy years based on the allegations that are incredibly detailed in this Third Amendment complaint as compared to these policies. Let me ask you about the Scottsdale policy. It does have the personal injury limitation that one of these offenses, including civil rights violations, false imprisonment, must be committed during the policy period of November 85 to November 86. It has a bodily injury provision as well. I talked to closing counsel about that a little bit. Give me your reaction to how we should read not under the personal injury section, but bodily injury does the work? You know, that policy does describe wrongful acts. And if it said the wrongful act had to be committed during the policy period, I'd acknowledge that. What it says is the personal injury must be committed during the policy period. And to do what? The offense of the person, the offense defined as one of the personal injury offenses must be committed. Well, you must have a commission of a violation of property rights, of civil rights, of false imprisonment. I believe, Your Honor, it says the personal injury must be committed, which is odd. If such offense is committed during the policy period, it doesn't say personal injury. But the offense is, here are the offenses that personal injury coverage under that policy covers. One is the offense of false imprisonment. These are the personal injuries, I think. Personal injury means. So these are the personal injuries they're talking about. They're not causing the injury. These are the injuries. Precisely. It's the tort, it seems to me, that is in a personal injury policy in Mississippi. It's the tort itself that is the personal injury, and not the injury, not the damage from it is the way the case law, little that there is, has interpreted personal injury policies. So I'm not — I'm just trying to say if you — do you have an argument you still fit under the personal injury section of the Scottsdale policy, or are you saying it doesn't matter, I'm under the bodily injury portion? No, I'm both, but I do. Your Honor, I believe that the Scottsdale policy is not written to invoke the Mississippi rule that you've just described. I think the Scottsdale policy says that if I am wrongfully imprisoned, if I am falsely imprisoned, or if my civil rights are violated during the period of this policy, that is the offense that entitles the insured to coverage for my claim under this policy. So he was falsely imprisoned in January of 86, so that — the offense occurred in the policy period. Is that your position? That would be an offense during the policy period. There's also the offense of humiliation, embarrassment. All of those, although they are — although they sound like damages, they are referred to as the offenses. Well, you have the Smith v. Sneed case, it is. You try to say that's just statutory, it's statute of limitations, whatever. But it seems to me it's an effort by the Supreme Court to say what is the tort of being in jail because your lawyer didn't do a good job, and it's the lawyer's fault that I was there for that length of time. So it's not just — it's not a statutory argument, it seems to me, at all — interpretation at all, it seems to me. It's an interpretation of what does it mean to be falsely imprisoned and when does that occur. I don't think the Court meant to say that — I don't think the Court did say that there was no false imprisonment over the time. I do think the Court said this, that for a legal malpractice case against the lawyer who caused it, that the statute of limitations is based on when his legal malpractice caused that person to go to prison, which is when the tort was complete. The fact that the person stayed in prison for a long time is just more damage, just as in any other tort that has continuing damage. That, to me, Your Honor, is a very distinct question from what an insurance policy provides coverage for. The insurance policy provides coverage for whatever it says. And in the Scottsdale policy — in the Travelers and Scottsdale policies, it says that if there is injury during our policy period, and if that injury during our policy period is caused by a wrongful act of an insured person, and those two things are at any time, then there's coverage for that injury that occurred during that policy period. To me, that doesn't pile on all kinds of insurance coverage or create a problem, because each carrier is going to try to restrict its liability under that wording to the increment of damage that occurred while it was on the risk. It will actually be far better for law enforcement officials, because the — you know, as in this case, the carriers who used to write these policies years ago when it was a brand-new idea are all gone. And if we track all these cases back to year one and say it's like malicious prosecution, so it's complete when the prosecution ends, then you're going to have a lot of people with no coverage at all. And that's probably not a great thing, because typically the rule is that one should look at insurance coverage in a way that benefits the policyholder if that's a reasonable reading of a policy the way that it's been written and sold to the insured. What's your view on the possibility of certifying this difficult question of Mississippi insurance law? I think that — and again, I'm a fan of the way Judge Stewart wrote these orders, because I think he found that it wasn't necessary to look at or adopt a common law rule of trigger. It's necessary to read the policy and see what it requires, and he found that it was met. If you do that, that's existing law. That is not a new question at all. That is simply the application of settled law that he cites in his orders, and it's been around. Everybody implements every single day all over the country. So I would say there's no need to certify it to affirm it. If the Court certified it, we would argue in the Mississippi Supreme Court that Judge Stewart accurately determined that the wording of these policies makes it unnecessary to go out and start writing new legal rules that have the effect of changing the meaning of the policies. He was supposed to compare the four corners of the policy to the four corners of the complaint. You're brief in distinguishing a lot of — you know, they cite a long list of cases, and I know you distinguish some, saying there are occurrence triggers, et cetera. Yes. But you also seem to say, well, Mississippi is different because in Mississippi it's all about the policy language, not these common law rules. In just about every State, isn't it about the policy language? I mean, Texas, it's certainly — it's the same eight corners rule. It's different in that that rule hasn't been ignored in Mississippi up to now in the way that it was in some of these other cases. You know, they're distinguishable for a lot of reasons, including some are in States with manifestation triggers already for example, where that Broward County case is. Some have a legal rule that says the issue isn't when the injury occurred, even if the policy says so. The issue is when the cause of the injury occurred, even if the policy doesn't say so. That's Illinois. So there are a lot of reasons why several of these — or why all of these are distinguishable in one way, shape, or form. I'll acknowledge, Your Honor, though, that it is the law in virtually every jurisdiction I know that a duty to defend a ruling is made on the basis of the policy, wording, and the complaint, and that's not unique to Mississippi. So I — if we imply that that is — that differentiates Mississippi from the other 50 States, then we probably overstated that. But I'm out of time. Thank you very much. All right, Mr. Beck. Your Honor, just to address a couple of the points that were raised, one with regards to the parole proceedings in 2006 and 2009. Judge Sterik did mention those in his ruling. He does not specifically state that those allegations would trigger these policies. But even if the judge had relied on that, we've cited a number of cases that hold that failure to come forward with exonerating evidence subsequent to the prosecution is not a new triggering event. That's just a continuation of the original harm, the original conduct, and the continuation of the ill effects of that imprisonment. I'm not sure this is before us. One of you, I thought, in the brief either here or in the district court, argued that these were not the same law enforcement officials who were dealing with the paroles. They were not covered individuals, and therefore their actions would be irrelevant. Is that at all in play anymore, Your Honor, PO? I think — I think that it is, Your Honor. If you look at a lot of these allegations that they're arguing trigger the policies, they're talking about conduct of other individuals or entities that were not Forest County-controlled entities. So to the extent — because these policies are triggered, it's not just the injury during the policy period, but it's injury resulting from Forest County's law enforcement activities. In a lot of these subsequent — Is that clear from the complaint, though, given we're in a duty-to-defend context? Excuse me, Your Honor? Is it clear from the complaint that these people aren't covered, the people who handled the parole, given — I mean, in the duty-to-defend context, it obviously gets interpreted very broadly at this stage, as opposed to a duty-to-indemnify situation? I think it is clear from the complaint that they are talking about other entities. If you look at the complaint as a whole, the only conduct they're talking about that Forest County was involved in is on the front end in 79 and 80. And the subsequent conduct, I mean, they're talking about failure to provide proper medical care during the incarceration or exposure to the general conditions that were in the prison. These are all, you know, the responsibility of other entities. That's not arising out of Forest County's law enforcement activities. Now, on the continuous trigger issue, you know, I just read Judge Sterritt's opinion differently than opposing counsel. He specifically discusses the continuous trigger theory and in rejecting our position that you were looking at the initial manifestation of the injury and the initial conduct. So I think it seems to me pretty clear that he did adopt a continuous trigger. And as the courts noted, that is a theory that's been limited to, you know, long-term latent injury cases, in particular asbestos bile injury cases. And any court, every court that has been asked to apply that trigger to these types of claims, civil rights claims involving malicious prosecution and wrongful incarceration have rejected the application of continuous trigger. And frankly, based on allegations of 1979 and 1980 conduct, the only way to get to the traveler's policies is to apply some type of continuous trigger, which again has been rejected. And frankly, if you look at the concept of continuous trigger and how it operates, it tells you why it doesn't apply to these types of claims, because they apply it from the initiation of the injurious conditions, exposure to asbestos, up until the manifestation of that injury. And it's because of the uncertainty in that time period that are going to trigger all these additional policies. Here, the manifestation was immediately apparent upon the conditions. So, thank you, Your Honors. Okay. Your Honors, I want to, excuse me, sorry, address a few points real quick that opposing counsel raised during his argument. First, with respect to the continuing injury trigger and the rule applied by Judge Stewart, the judge did not say he was applying a continuing injury trigger, but in fact, that's what he did. He applied it with respect to the Scottsdale policy, and as this Court has noted, that is the effect of the ruling, is that this is a continuing injury. If false imprisonment during a policy that was in effect five years after the imprisonment began triggers coverage, that is in effect, in actuality, the continuing trigger, the continuing injury trigger. With respect to the Scottsdale policy language regarding personal injury coverage and the offense committed during the policy period, this is widely used language. We cited a number of cases in our brief that employ extremely similar language. There's slight differences from policy to policy, and you'll notice that if you look at the courageous case, Gulf underwriting Sarsfield. Generally, these law enforcement policies, they're similar, but they're not the same. They tend to, they don't use the forms, the ISO forms, if you will, so there's slight differences from insurer to insurer. But the language here, offense committed during the policy period, is widely understood. It is widely used language, and I certainly disagree with the opposing counsel's characterization that Scottsdale intended it to mean something different in Mississippi. It's very similar to the Zurich policy language that was at issue in the same case, and we raised this in our brief where Judge Stewart found that offense committed during the policy period under the Zurich policy meant there was no personal injury in very similar circumstances. Yet the same language on our policy, the judge found an injury during our policy period. It's widely used language and is not intended, or there's no reasonable interpretation that offense means an injury under the Scottsdale policy. And to rule otherwise would mean that essentially, if the district court's ruling is affirmed that imprisonment is an offense during our policy period would defy this court's ruling in the American Guarantee case. American Guarantee applied that offense committed during the policy period language, and in different circumstances, it was an invasion of privacy case, but that was under Mississippi law, and that court made it clear that offense means the tort, the wrongful breach of the moral code, as the court described. And finally, I just wanted to point out as well, back this court's attention to the Smith v. Sneed case. The Smith was the Mississippi Supreme Court that looked at a continuing injury from continuing imprisonment and considered that one injury and talked about the continuing ill effects. A plaintiff may be entitled to more damages for staying in prison longer, but it's still just one injury that happens at the time. I didn't release one distinction there that it wasn't the State, wasn't the county being sued, it was the lawyer, and so it was his malpractice. So the effect of his malpractice was to send him off to jail, but he wouldn't be liable in the way that, it seems to me, Forest County might be for the false imprisonment because of the prosecution of the individual and evidence from the law enforcement. But you're out of time. I'm not trying to prolong it. It does seem to be a distinction. Let me ask as a matter of all these different insurance companies have been involved, some of them without law enforcement liability policies, are these two insurance companies the only ones who are paying any part of the claims that were brought by these plaintiffs, not just in the settlement, but there were a lot of actions before we got to that settlement? Sure. I would say I think the best characterization is an opposing counsel described the HILO settlement agreement. I'm not talking about the settlement itself. Any other insurance companies at some earlier stage in this litigation settle with the plaintiffs and pay some part of their claim. There are a number of different insurance carriers involved there who contributed and are out. It's just only Travelers and Scotts are involved with potentially paying more. Gotcha. All right. Thanks, all of you, for bringing this case to us.